(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## OCTANE FITNESS, LLC *v.* ICON HEALTH & FITNESS, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 12–1184. Argued February 26, 2014—Decided April 29, 2014

The Patent Act's fee-shifting provision authorizes district courts to award attorney's fees to prevailing parties in "exceptional cases." 35 U. S. C. §285. In *Brooks Furniture Mfg., Inc.* v. *Dutailier Int'l, Inc.,* 393 F. 3d 1378, 1381, the Federal Circuit defined an "exceptional case" as one which either involves "material inappropriate conduct" or is both "objectively baseless" and "brought in subjective bad faith." *Brooks Furniture* also requires that parties establish the "exceptional" nature of a case by "clear and convincing evidence." *Id.*, at 1382.

Respondent ICON Health & Fitness, Inc., sued petitioner Octane Fitness, LLC, for patent infringement. The District Court granted summary judgment to Octane. Octane then moved for attorney's fees under §285. The District Court denied the motion under the *Brooks Furniture* framework, finding ICON's claim to be neither objectively baseless nor brought in subjective bad faith. The Federal Circuit affirmed.

*Held*: The *Brooks Furniture* framework is unduly rigid and impermissibly encumbers the statutory grant of discretion to district courts. Pp. 7–12.

(a) Section 285 imposes one and only one constraint on district courts' discretion to award attorney's fees: The power is reserved for "exceptional" cases. Because the Patent Act does not define "exceptional," the term is construed "in accordance with [its] ordinary meaning." *Sebelius* v. *Cloer*, 569 U. S. ___, ___. In 1952, when Congress used the word in §285 (and today, for that matter), "[e]xceptional" meant "uncommon," "rare," or "not ordinary." Webster's New International Dictionary 889 (2d ed. 1934). An "exceptional" case, then, is simply one that stands out from others with re-

Syllabus

spect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. Cf. *Fogerty* v. *Fantasy, Inc.*, 510 U. S. 517. Pp. 7–8.

   (b) The *Brooks Furniture* framework superimposes an inflexible framework onto statutory text that is inherently flexible. Pp. 8–11.

   (1) *Brooks Furniture* is too restrictive in defining the two categories of cases in which fee awards are allowed. The first category—cases involving litigation or certain other misconduct—appears to extend largely to independently sanctionable conduct. But that is not the appropriate benchmark. A district court may award fees in the rare case in which a party's unreasonable, though not independently sanctionable, conduct is so "exceptional" as to justify an award. For litigation to fall within the second category, a district court must determine that the litigation is both objectively baseless and brought in subjective bad faith. But a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to be "exceptional." The Federal Circuit imported this second category from *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, 508 U. S. 49, but that case's standard finds no roots in §285's text and makes little sense in the context of the exceptional-case determination. Pp. 8–10.

   (2) *Brooks Furniture* is so demanding that it would appear to render §285 largely superfluous. Because courts already possess the inherent power to award fees in cases involving misconduct or bad faith, see *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 258–259, this Court has declined to construe fee-shifting provisions narrowly so as to avoid rendering them superfluous. See, *e.g.*, *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 419. Pp. 10–11.

   (3) *Brooks Furniture*'s requirement that proof of entitlement to fees be made by clear and convincing evidence is not justified by §285, which imposes no specific evidentiary burden. Nor has this Court interpreted comparable fee-shifting statutes to require such a burden of proof. See, *e.g.*, *Fogerty*, 510 U. S, at 519. P. 11.

496 Fed. Appx. 57, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, GINSBURG, BREYER, ALITO, and KAGAN, JJ., joined, and in which SCALIA, J., joined except as to footnotes 1–3.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

### No. 12–1184

## OCTANE FITNESS, LLC, PETITIONER *v.* ICON HEALTH & FITNESS, INC.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### [April 29, 2014]

JUSTICE SOTOMAYOR delivered the opinion of the Court.*

Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation. It provides, in its entirety, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U. S. C. §285. In *Brooks Furniture Mfg., Inc.* v. *Dutailier Int'l, Inc.*, 393 F. 3d 1378 (2005), the United States Court of Appeals for the Federal Circuit held that "[a] case may be deemed exceptional" under §285 only in two limited circumstances: "when there has been some material inappropriate conduct," or when the litigation is both "brought in subjective bad faith" and "objectively baseless." *Id.,* at 1381. The question before us is whether the *Brooks Furniture* framework is consistent with the statutory text. We hold that it is not.

## I

### A

Prior to 1946, the Patent Act did not authorize the awarding of attorney's fees to the prevailing party in

---

*JUSTICE SCALIA joins this opinion except as to footnotes 1–3.

patent litigation. Rather, the "American Rule" governed: "'[E]ach litigant pa[id] his own attorney's fees, win or lose . . . .'" *Marx* v. *General Revenue Corp.*, 568 U. S. ___, ___ (2013) (slip op., at 9). In 1946, Congress amended the Patent Act to add a discretionary fee-shifting provision, then codified in §70, which stated that a court "may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment in any patent case." 35 U. S. C. §70 (1946 ed.).[1]

Courts did not award fees under §70 as a matter of course. They viewed the award of fees not "as a penalty for failure to win a patent infringement suit," but as appropriate "only in extraordinary circumstances." *Park-In-Theatres, Inc.* v. *Perkins*, 190 F. 2d 137, 142 (CA9 1951). The provision enabled them to address "unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force," which made a case so unusual as to warrant fee-shifting. *Ibid.*; see also *Pennsylvania Crusher Co.* v. *Bethlehem Steel Co.*, 193 F. 2d 445, 451 (CA3 1951) (listing as "adequate justification[s]" for fee awards "fraud practiced on the Patent Office or vexatious or unjustified litigation").

Six years later, Congress amended the fee-shifting provision and recodified it as §285. Whereas §70 had specified that a district court could "in its discretion award reasonable attorney's fees to the prevailing party," the revised language of §285 (which remains in force today) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." We have observed, in interpreting the damages provision of the Patent Act, that the addition of the phrase "exceptional

---

[1] This provision did "not contemplat[e] that the recovery of attorney's fees [would] become an ordinary thing in patent suits . . . ." S. Rep. No. 79–1503, p. 2 (1946).

cases" to §285 was "for purposes of clarification only."[2] *General Motors Corp.* v. *Devex Corp.*, 461 U. S. 648, 653, n. 8 (1983); see also *id.,* at 652, n. 6. And the parties agree that the recodification did not substantively alter the meaning of the statute.[3]

For three decades after the enactment of §285, courts applied it—as they had applied §70—in a discretionary manner, assessing various factors to determine whether a given case was sufficiently "exceptional" to warrant a fee award. See, *e.g., True Temper Corp.* v. *CF&I Steel Corp.,* 601 F. 2d 495, 508–509 (CA10 1979); *Kearney & Trecker Corp.* v. *Giddings & Lewis, Inc.,* 452 F. 2d 579, 597 (CA7 1971); *Siebring* v. *Hansen,* 346 F. 2d 474, 480–481 (CA8 1965).

In 1982, Congress created the Federal Circuit and vested it with exclusive appellate jurisdiction in patent cases. 28 U. S. C. §1295. In the two decades that followed, the Federal Circuit, like the regional circuits before it, instructed district courts to consider the totality of the circumstances when making fee determinations under §285. See, *e.g., Rohm & Haas Co.* v. *Crystal Chemical Co.,* 736 F. 2d 688, 691 (1984) ("Cases decided under §285 have noted that 'the substitution of the phrase "in exceptional cases" has not done away with the discretionary feature'");

———————

[2] The Senate Report similarly explained that the new provision was "substantially the same as" §70, and that the "'exceptional cases'" language was added simply to "expres[s] the intention of the [1946] statute as shown by its legislative history and as interpreted by the courts." S. Rep. No. 82–1979, p. 30 (1952).

[3] See Brief for Petitioner 35 ("[T]his amendment was not intended to create a stricter standard for fee awards, but instead was intended to clarify and endorse the already-existing statutory standard"); Brief for Respondent 17 ("When it enacted §285, as the historical notes to this provision make clear, Congress adopted the standards applied by courts interpreting that statute's predecessor, §70 of the 1946 statute. Congress explained that §285 'is substantially the same as the corresponding provision in' §70").

*Yamanouchi Pharmaceutical Co., Ltd.* v. *Danbury Pharmacal, Inc.*, 231 F. 3d 1339, 1347 (2000) ("In assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances").

In 2005, however, the Federal Circuit abandoned that holistic, equitable approach in favor of a more rigid and mechanical formulation. In *Brooks Furniture Mfg., Inc.* v. *Dutailier Int'l, Inc.*, 393 F. 3d 1378 (2005), the court held that a case is "exceptional" under §285 only "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Id.,* at 1381. "Absent misconduct in conduct of the litigation or in securing the patent," the Federal Circuit continued, fees "may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Ibid.* The Federal Circuit subsequently clarified that litigation is objectively baseless only if it is "so unreasonable that no reasonable litigant could believe it would succeed," *iLOR, LLC* v. *Google, Inc.*, 631 F. 3d 1372, 1378 (2011), and that litigation is brought in subjective bad faith only if the plaintiff "actually know[s]" that it is objectively baseless, *id.,* at 1377.[4]

——————

[4] In *Kilopass Technology, Inc.* v. *Sidense Corp.*, 738 F. 3d 1302 (CA Fed 2013)—decided after our grant of certiorari but before we heard oral argument in this case—the Federal Circuit appeared to cut back on the "subjective bad faith" inquiry, holding that the language in *iLOR* was dictum and that "actual knowledge of baselessness is not required." 738 F. 3d, at 1310. Rather, the court held, "a defendant need only prove reckless conduct to satisfy the subjective component of the §285 analysis," *ibid.*, and courts may "dra[w] an inference of bad faith from circumstantial evidence thereof when a patentee pursues claims that are devoid of merit," *id.,* at 1311. Most importantly, the Federal Circuit stated that "[o]bjective baselessness alone can create a sufficient

Finally, *Brooks Furniture* held that because "[t]here is a presumption that the assertion of infringement of a duly granted patent is made in good faith[,] . . . the underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence." 393 F. 3d, at 1382.

B

The parties to this litigation are manufacturers of exercise equipment. The respondent, ICON Health & Fitness, Inc., owns U. S. Patent No. 6,019,710 ('710 patent), which discloses an elliptical exercise machine that allows for adjustments to fit the individual stride paths of users. ICON is a major manufacturer of exercise equipment, but it has never commercially sold the machine disclosed in the '710 patent. The petitioner, Octane Fitness, LLC, also manufactures exercise equipment, including elliptical machines known as the Q45 and Q47.

ICON sued Octane, alleging that the Q45 and Q47 infringed several claims of the '710 patent. The District Court granted Octane's motion for summary judgment, concluding that Octane's machines did not infringe ICON's patent. 2011 WL 2457914 (D Minn., June 17, 2011). Octane then moved for attorney's fees under §285. Applying the *Brooks Furniture* standard, the District Court denied Octane's motion. 2011 WL 3900975 (D Minn., Sept. 6, 2011). It determined that Octane could show neither that ICON's claim was objectively baseless nor that ICON had brought it in subjective bad faith. As to objective baselessness, the District Court rejected Octane's

———————

inference of bad faith to establish exceptionality under §285, unless the circumstances as a whole show a lack of recklessness on the patentee's part." *Id.*, at 1314. Chief Judge Rader wrote a concurring opinion that sharply criticized *Brooks Furniture*, 738 F. 3d, at 1318–1320; the court, he said, "should have remained true to its original reading of" §285, *id.,* at 1320.

argument that the judgment of noninfringement "should have been a foregone conclusion to anyone who visually inspected" Octane's machines. *Id., *2. The court explained that although it had rejected ICON's infringement arguments, they were neither "frivolous" nor "objectively baseless." *Id., *2–*3. The court also found no subjective bad faith on ICON's part, dismissing as insufficient both "the fact that [ICON] is a bigger company which never commercialized the '710 patent" and an e-mail exchange between two ICON sales executives, which Octane had offered as evidence that ICON had brought the infringement action "as a matter of commercial strategy."[5] *Id., *4.

ICON appealed the judgment of noninfringement, and Octane cross-appealed the denial of attorney's fees. The Federal Circuit affirmed both orders. 496 Fed. Appx. 57 (2012). In upholding the denial of attorney's fees, it rejected Octane's argument that the District Court had "applied an overly restrictive standard in refusing to find the case exceptional under §285." *Id.,* at 65. The Federal Circuit declined to "revisit the settled standard for exceptionality." *Ibid.*

We granted certiorari, 570 U. S. __ (2013), and now reverse.

---

[5] One e-mail, sent from ICON's Vice President of Global Sales to two employees, read: "'We are suing Octane. Not only are we coming out with a greater product to go after them, but throwing a lawsuit on top of that.'" 2011 WL 3900975, *4. One of the recipients then forwarded that e-mail to a third party, along with the accompanying message: "'Just clearing the way and making sure you guys have all your guns loaded!'" *Ibid.* More than a year later, that same employee sent an e-mail to the Vice President of Global Sales with the subject, "'I heard we are suing Octane!'" *Ibid.* The executive responded as follows: "'Yes—old patent we had for a long time that was sitting on the shelf. They are just looking for royalties.'" *Ibid.* The District Court wrote that "in the light most favorable to Octane, these remarks are stray comments by employees with no demonstrated connection to the lawsuit." *Ibid.*

## II

The framework established by the Federal Circuit in *Brooks Furniture* is unduly rigid, and it impermissibly encumbers the statutory grant of discretion to district courts.

## A

Our analysis begins and ends with the text of §285: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." This text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for "exceptional" cases.

The Patent Act does not define "exceptional," so we construe it "'in accordance with [its] ordinary meaning.'" *Sebelius* v. *Cloer*, 569 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 6); see also *Bilski* v. *Kappos*, 561 U. S. 593, \_\_\_ (2010) (slip op., at 6) ("In patent law, as in all statutory construction, '[u]nless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning"'"). In 1952, when Congress used the word in §285 (and today, for that matter), "[e]xceptional" meant "uncommon," "rare," or "not ordinary." Webster's New International Dictionary 889 (2d ed. 1934); see also 3 Oxford English Dictionary 374 (1933) (defining "exceptional" as "out of the ordinary course," "unusual," or "special"); Merriam-Webster's Collegiate Dictionary 435 (11th ed. 2008) (defining "exceptional" as "rare"); *Noxell Corp.* v. *Firehouse No. 1 Bar-B-Que Restaurant*, 771 F. 2d 521, 526 (CADC 1985) (R. B. Ginsburg, J., joined by Scalia, J.) (interpreting the term "exceptional" in the Lanham Act's identical fee-shifting provision, 15 U. S. C. §1117(a), to mean "uncommon" or "not run-of-the-mill").

We hold, then, that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering

both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.[6]  As in the comparable context of the Copyright Act, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty* v. *Fantasy, Inc.*, 510 U. S. 517, 534 (1994).

### B

### 1

The Federal Circuit's formulation is overly rigid.  Under the standard crafted in *Brooks Furniture*, a case is "exceptional" only if a district court either finds litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both "brought in subjective bad faith" and "objectively baseless."  393 F. 3d, at 1381.  This formulation superimposes an inflexible framework onto statutory text that is inherently flexible.

For one thing, the first category of cases in which the Federal Circuit allows fee awards—those involving litigation misconduct or certain other misconduct—appears to extend largely to independently sanctionable conduct.  See *ibid.* (defining litigation-related misconduct to include "willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexa-

---

[6] In *Fogerty* v. *Fantasy, Inc.*, 510 U. S. 517 (1994), for example, we explained that in determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a "nonexclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.*, at 534, n. 19 (internal quotation marks omitted).

tious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions"). But sanctionable conduct is not the appropriate benchmark. Under the standard announced today, a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so "exceptional" as to justify an award of fees.

The second category of cases in which the Federal Circuit allows fee awards is also too restrictive. In order for a case to fall within this second category, a district court must determine *both* that the litigation is objectively baseless *and* that the plaintiff brought it in subjective bad faith. But a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award. Cf. *Noxell*, 771 F. 2d, at 526 ("[W]e think it fair to assume that Congress did not intend rigidly to limit recovery of fees by a [Lanham Act] defendant to the rare case in which a court finds that the plaintiff 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons' . . . . Something less than 'bad faith,' we believe, suffices to mark a case as 'exceptional'").

ICON argues that the dual requirement of "subjective bad faith" and "objective baselessness" follows from this Court's decision in *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, 508 U. S. 49 (1993) (*PRE*), which involved an exception to the *Noerr-Pennington* doctrine of antitrust law. It does not. Under the *Noerr-Pennington* doctrine—established by *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U. S. 127 (1961), and *Mine Workers* v. *Pennington*, 381 U. S. 657 (1965)—defendants are immune from antitrust liability for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government. *PRE*, 508 U. S., at 56. But under a "sham exception" to this doctrine, "activity 'ostensibly directed toward

influencing governmental action' does not qualify for *Noerr* immunity if it 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'" *Id.*, at 51. In *PRE*, we held that to qualify as a "sham," a "lawsuit must be objectively baseless" and must "concea[l] 'an attempt to interfere directly with the business relationships of a competitor . . . .'" *Id.,* at 60–61 (emphasis deleted). In other words, the plaintiff must have brought baseless claims in an attempt to thwart competition (*i.e.,* in bad faith).

In *Brooks Furniture*, the Federal Circuit imported the *PRE* standard into §285. See 393 F. 3d, at 1381. But the *PRE* standard finds no roots in the text of §285, and it makes little sense in the context of determining whether a case is so "exceptional" as to justify an award of attorney's fees in patent litigation. We crafted the *Noerr-Pennington* doctrine—and carved out only a narrow exception for "sham" litigation—to avoid chilling the exercise of the First Amendment right to petition the government for the redress of grievances. See *PRE,* 508 U. S., at 56 ("Those who petition government for redress are generally immune from antitrust liability"). But to the extent that patent suits are similarly protected as acts of petitioning, it is not clear why the shifting of fees in an "exceptional" case would diminish that right. The threat of antitrust liability (and the attendant treble damages, 15 U. S. C. §15) far more significantly chills the exercise of the right to petition than does the mere shifting of attorney's fees. In the *Noerr-Pennington* context, defendants seek immunity from a judicial declaration that their filing of a lawsuit was actually unlawful; here, they seek immunity from a far less onerous declaration that they should bear the costs of that lawsuit in exceptional cases.

### 2

We reject *Brooks Furniture* for another reason: It is so

demanding that it would appear to render §285 largely superfluous. We have long recognized a common-law exception to the general "American rule" against fee-shifting—an exception, "inherent" in the "power [of] the courts" that applies for "'willful disobedience of a court order'" or "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 258–259 (1975). We have twice declined to construe fee-shifting provisions narrowly on the basis that doing so would render them superfluous, given the background exception to the American rule, see *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 419 (1978); *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 402, n. 4 (1968) (*per curiam*), and we again decline to do so here.

3

Finally, we reject the Federal Circuit's requirement that patent litigants establish their entitlement to fees under §285 by "clear and convincing evidence," *Brooks Furniture*, 393 F. 3d, at 1382. We have not interpreted comparable fee-shifting statutes to require proof of entitlement to fees by clear and convincing evidence. See, *e.g., Fogerty*, 510 U. S., at 519; *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384 (1990); *Pierce* v. *Underwood*, 487 U. S. 552, 558 (1988). And nothing in §285 justifies such a high standard of proof. Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one. Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard, see, *e.g., Béné* v. *Jeantet*, 129 U. S. 683, 688 (1889), and that is the "standard generally applicable in civil actions," because it "allows both parties to 'share the risk of error in roughly equal fashion,'" *Herman & MacLean* v. *Huddleston*, 459 U. S. 375, 390 (1983).

\*     \*     \*

For the foregoing reasons, the judgment of the United States Court of Appeals for the Federal Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*